KAREN P. HEWITT
United States Attorney
PETER J. MAZZA
Assistant United States Attorney
California Bar No. 239918
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5528

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARGARITA HEREDIA-VARGAS (2),<br><br>Defendant. | Case No. 07-CR-3415-DMS<br><br>DATE: March 7, 2008<br>TIME: 11:00 a.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:<br>(1) DISMISS THE INDICTMENT<br>(2) SUPPRESS STATEMENTS<br>(3) SUPPRESS EVIDENCE<br>(4) SUPPRESS FRUITS OF ARREST<br>(5) COMPEL DISCOVERY<br>(6) FILE FURTHER MOTIONS<br><br>TOGETHER WITH A STATEMENT OF FACTS AND A MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, and hereby files its response to Defendant Margarita Heredia-Vargas's motions to dismiss the indictment, suppress statements, suppress evidence, suppress fruits of arrest, to compel discovery and for leave to file additional motions. Said response is based upon the files and records of this case, together with the attached statement of facts and accompanying memorandum of points and authorities.

//

//

**I**

**STATEMENT OF THE CASE**

**A. THE CHARGE**

On December 19, 2007, a grand jury sitting in the Southern District of California returned a one-count Indictment against Defendants, charging them with possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On December 20, 2007, Defendant was arraigned on the Indictment.

**B. STATUS OF DISCOVERY**

On January 2, 2008, the Government produced approximately 120 pages of written discovery to all Defendants. On January 22, 2008, the Government produced an additional two pages of discovery to Defendant Heredia-Vargas. The Government then produced another three pages of discovery to all Defendants on February 7, 2008. The documents that have been produced constitute all discoverable material that the Government has to date, and includes, inter alia: (1) investigative reports; (2) Defendant's criminal history; (3) documents seized from Defendant's rental vehicle; and (4) photographs taken throughout the investigation.

**II**

**STATEMENT OF FACTS**

During the day on December 8, 2007, Border Patrol agents were conducting routine surveillance duties at the Midway Campground, which is in the area of the Imperial Sand Dunes. Throughout the course of the day, Border Patrol Agent Tyler Emblem observed activity at the Midway Campground that he felt was suspicious based on his training and experience. Specifically, Agent Emblem observed several individuals camping in the area of a rental motor home that had positioned their other vehicles in a "V" shape, which effectively blocked the view into their camping area. Agent Emblem also recognized one of the off-road vehicles parked in the area of this group as one that fit the description of a sand buggy that had previously been reported by citizens as a possible drug smuggling vehicle. At approximately 11:30 a.m., Drug Enforcement

Administration (DEA) Task Force Officer (TFO) Craig Moore and Bureau of Land Management (BLM) Special Agent Clark established stationary surveillance of the suspicious campground. As agents conducted surveillance of the group throughout the afternoon, they noticed that several individuals entered the camp and left shortly thereafter. They further noticed several members of the group going to the outhouse for extended periods of time. Agents conducted surveillance of the Defendants' campground from close range – approximately 30 yards – throughout the day.

At approximately 8:10 p.m., agents observed one of the all terrain vehicles (ATVs) associated with the group depart from the campground with its headlights off. The ATV left in a southerly direction toward the United States/Mexico international boundary that is approximately one mile south of the campground. At approximately 8:20 p.m., agents observed an individual later identified as Defendant Trapero-Zazueta extinguish the campfire, while another individual later identified as Defendant Lozano-Vargas left the campground with his headlights off.

At approximately 8:30 p.m., Defendant Lozano-Vargas returned to the campground on an ATV with the headlights off. Shortly thereafter, agents utilizing night-vision equipment, observed several other individuals on ATVs driving from the south toward the campground without using the headlights on their vehicles. Agents observed that these ATVs also had large bundles attached to them. Based on these observations, and their individual training and experiences, agents suspected that the group to be conducting narcotics-related activities.

At the campground, Ranger Swanson observed the ATVs unload the bundles onto a flatbed trailer at the direction of Defendant Lozano-Vargas. After the bundles were loaded onto the flatbed trailer, the ATVs departed the campground with their headlights activated. Ranger Swanson then observed individuals later identified as Defendants Trapero-Zazueta, Lozano-Vargas, and Christian Maria Rodriguez transferring the bundles from the flatbed trailer to the area of the motor home. The flatbed trailer was hooked up to the motor home. During the transfer of the bundles, agents noticed Defendant Magana appear to be serving as a lookout for the group. He would alternate between watching over the transfer of the bundles and look out in the direction of

other campgrounds. Once the bundles were removed from the trailer, Defendant Trapero-Zazueta relit the campfire.

At approximately 11:50 p.m., agents approached the area of the motor home. As they neared, they made contact with Defendant Rodriguez who was seated in the driver's seat of the motor home. Defendant Rodriguez exited the motor home and informed agents that there were more individuals still inside. Agents and officers instructed all remaining individuals to exit the motor home. Only Defendants Trapero-Zazueta and Lozano-Vargas responded by exiting the motor home. Officers then called out a second time, and Defendant Magana exited. Officers called out a third time for remaining occupants to exit the motor home, and Defendant Heredia-Vargas finally emerged from the motor home. Fearing additional individuals may still be inside, officers conducted a protective sweep of the motor home.

Upon entering the motor home, agents encountered an overwhelming odor of a masking agent and marijuana. As agents proceeded to sweep the rear area of the motor home, they noticed in plain view, several large bundles in the shower area. Agents noticed in plain view several additional bundles stacked immediately next to the bed in the rear sleeping quarters. The bundles were approximately 2' x. 1.5' wide and approximately 10" deep. They were painted black, and wrapped in cellophane plastic and aluminum foil. Based on their training and experiences, officers and agents at the scene recognized these bundles to be consistent with those frequently used to conceal narcotics.

Once the agents exited the motor home, Defendant Rodriguez spontaneously stated that her mother had rented the motor home and she wanted to know "what was going on." Subsequent checks revealed the motor home was rented to Defendant Heredia-Vargas on December 7, 2007, in Indio, California. The five individuals were taken into custody.

A subsequent search of the vehicle revealed 47 bundles that contained approximately 382.08 kilograms (842.40 pounds). Field tests revealed that the bundles contained marijuana.

On December 9, 2007, at approximately 12:15 a.m., DEA Special Agent Jeff Butler informed Defendant Trapero-Zazueta of his Miranda rights in Spanish pursuant to a pre-printed DEA form. Defendant Trapero-Zazueta agreed to speak with agents without the presence of an attorney. Defendant Trapero-Zazueta stated that he resided in Indio, California, and was in the United States illegally. He claimed he was asleep in the back of the motorhome with a friend, and was unaware the motor home contained marijuana. Defendant Trapero-Zazueta claimed that he had traveled to the sand dunes with a friend who he did not know by name in order to ride ATVs.

At approximately 12:37 a.m., Federal Bureau of Investigation Special Agent Ronald Ribail advised Defendant Heredia-Vargas of her Miranda rights as set forth on a standard Advice of Rights form used by the FBI. Defendant Heredia-Vargas waived her Miranda rights and agreed to make a statement without an attorney present. Defendant Heredia-Vargas stated that she rented the motor home on December 7. 2007 in Indio, California. She said her grandson, Defendant Lozano-Vargas, and his friend, "Adam," traveled with her to rent the vehicle. Defendant Vargas stated that they were being followed by an unidentified male driving a black truck. She stated that after renting the motor home, they drove it to Calexico, California where they met with two other unidentified males who helped her grandson hook up the flatbed trailer to the motor home. They then drove to the campground. She said that she slept on and off throughout the day on Saturday, December 8, 2007. She stated that when law enforcement arrived at their campground, she was sleeping on the couch near the door of the motor home. She stated that she had moved around the motor home for much of the day and night, and specifically mentioned that she used the bathroom at approximately 9:00 p.m. During her post-arrest interview, Defendant Heredia-Vargas acknowledged the presence of the bundles being off-loaded from the motor home, but denied knowing how they came to be located in the motor home. Defendant Heredia-Vargas denied observing any marijuana or other large packages in the motor home at any time. She noted that the motor home did not contain marijuana when she rented it on Friday, December 7, 2007.

At approximately 12:37 a.m., Agent Butler advised Defendant Rodriguez of her Miranda rights from a pre-printed DEA form in English. Defendant Rodriguez responded "what questions" when asked whether she was willing to answer some questions from agents. She informed agents that, while she was allowed to drive the vehicle, her name was not on the rental agreement. She then invoked her right to counsel, and the interview ceased.

At approximately 12:50 a.m., Agent Butler informed Defendant Lozano-Vargas of his Miranda rights in English from a pre-printed DEA form. Defendant Lozano-Vargas agreed to answer questions without an attorney present. He stated that the other occupants of the motor home arrived at the campground on Friday night, December 7, 2007. Defendant Lozano-Vargas admitted that he was watching for Border Patrol agents and other law enforcement, and that when he would see law enforcement, he would notify his friends. He stated that he expected to be paid approximately $200 over the weekend. Defendant Lozano-Vargas further informed agents that he had traveled to Indio, California with Defendant Trapero-Zazueta in the black truck, but that he did not know Defendant Trapero-Zazueta well. Defendant Lozano-Vargas stated that he came to the sand dunes at the invitation of Defendant Rodriguez. He stated that he did not know the individuals who had arrived at the campground earlier in the evening on the ATVs. He further denied knowing there was marijuana in the motor home. Finally, Defendant Lozano-Vargas informed agents that he did not wish to answer any more questions without the presence of his grandmother, Defendant Vargas. Agents did not ask any more questions.

At approximately 1:10 a.m., Agent Butler read Defendant Magana his Miranda rights from a pre-printed DEA form. Defendant Magana immediately invoked his right to remain silent. Agents did not ask Defendant Magana any questions.

//

//

//

//

## III

## POINTS AND AUTHORITIES

### A. DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED

Defendant moves for dismissal of the indictment alleging misinstruction of the Grand Jury.

In United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005), the Ninth Circuit once again addressed whether the model grand jury charge recommended by the Judicial Conference of the United States violates the Fifth Amendment by undermining the independence of the grand jury. Id. at 1186. In so doing, the Court set out each challenged instruction, including the instruction at issue here. Id. at 1187. After thoroughly examining the history of the grand jury as well as the structure of the Grand Jury Clause of the Fifth Amendment, the Ninth Circuit determined that the challenged instructions did not, in fact, violate the Constitution, thus affirming the district court's denial of the defendant's motion to dismiss. Id. at 1186.

Several other district courts in this district have denied this exact motion by similarly situated defendants. (See Order by District Court Judge John A. Houston, attached as Attachment A.) Nonetheless, if the Court would like further briefing by the Government on this issue, the Government will do so.

Accordingly, this Court should reject Defendant's invitation to ignore Ninth Circuit precedent as set forth in Navarro-Vargas, and deny Defendant's motion to dismiss the indictment.

### B. DEFENDANT'S MOTIONS TO SUPPRESS SHOULD BE DENIED

#### 1. Agents Had Probable Cause To Search The Vehicle

Defendant contends that agents did not have probable cause to search the motor home used by the Defendants. (Def.'s Mot. 13.) In Carroll v. United States, 267 U.S. 132 (1925), the Supreme Court first established the "automobile exception" to the general rule that a warrant must first be secured before a search may be conducted. Carroll explained that searches of automobiles do not require a prior warrant because a vehicle may be "quickly moved" from a given location. Id. at 153. Over 50 years after Carroll, the Supreme Court acknowledged a second justification

for the "automobile exception," that an individual's "expectation of privacy is significantly less than that relating to one's home or office." South Dakota v. Opperman, 428 U.S. 364, 367 (1976).

In California v. Carney, 471 U.S. 386 (1985), a case that presented similar facts to the instant case, the Supreme Court extended the application of the "automobile exception" to motor homes. In Carney, DEA agents observed a youth accompany Carney into a mobile home parked in a vacant parking lot. 471 U.S. at 388. The agents kept the mobile home under surveillance for the entire hour and a half the youth was in it. Id. When the youth exited, the police spoke to him, and the youth agreed to return to the mobile home and knock on the door. Id. The agents then identified themselves and entered the mobile home without a warrant, and observed marijuana and other drug paraphernalia in plain view. Id. The Court held that the "automobile exception" applied and that the search was reasonable. Id. at 394-95. In so holding, the Court reasoned that, while the motor home did have some attributes of a residence, it clearly fell within the "automobile exception" because it was "readily mobile" and was licensed to operate on public roads, and therefore those operating it had a correspondingly diminished expectation of privacy. Id. at 393.

Here, agents began surveillance of the Defendants' campground in the morning hours of December 8, 2007. The motor home remained mobile throughout the day and night, maintained convenient access to public roadways. As the day wore on, the agents observed suspicious activity in and around the campground. As night fell, agents were positioned close enough to continue their observations, but also employed night-vision equipment to enhance their surveillance. In the early evening hours, agents observed several ATVs drive to and from the campground with their headlights off. At approximately 8:30 p.m., agents observed the ATVs arrive at the campground with large bundles attached to them. Over the next couple hours, agents observed the Defendants unload the bundles from the ATVs and eventually carry them into the motor home. At approximately 11:50 p.m., agents approached the motor home and made contact with Defendants. After calling for all individuals to exit the motor home, agents conducted a protective sweep out of fear that other individuals remained inside. Once inside the motor home, agents immediately

noticed several bundles of marijuana throughout the motor home as well as an overwhelming scent of marijuana and a masking agent. Accordingly, the search of the motor home was reasonable. See Carney, 471 U.S. at 393-94 (noting that the automobile exception has particular application with regard to a motor home because "it lends itself easily to use as an instrument of illegal drug traffic and other illegal activity").

**2. Defendant's Post-Arrest Statements Were Voluntary**

Defendant baldly asserts that her statements were involuntary, although she does not proffer – let alone provide a declaration for – any facts to suggest that her statements were involuntary. (Def.'s Mot. 11.) A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"; "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). Whether there has been an intelligent Miranda waiver depends upon the particular facts in the case, including but not limited to the background, experience, and conduct of the accused. Brewer v. Williams, 430 U.S. 387, 403 (1977); United States v. Rodriguez-Gastelum, 569 F.2d 482, 483 (9th Cir.), cert. denied, 436 U.S. 919 (1978). A statement is considered "voluntary" if the totality of the surrounding circumstances indicates it was the product of free and rational choice. Columbe v. Connecticut, 367 U.S. 568 (1961). The voluntariness of a Fifth Amendment waiver depends on the absence of police overreaching, not on "free choice" in any broader sense of the word. Connelly, 479 U.S. 157. In examining the totality of the circumstances, the court must examine the personal characteristics of the defendant, together with the details of the interrogation. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Relevant personal characteristics include age, intelligence,

educational level, knowledge of rights, and the defendant's physical, mental, or emotional condition. Brewer, 430 U.S. at 403.

Here, FBI Special Agent Ronald Ribail advised Defendant of her Miranda rights on December 9, 2007, at approximately 12:33 a.m. Agent Ribail read Defendant her rights pursuant to an Advice of Rights form, a standardized document used by the FBI. Defendant was then provided a copy of the Advice of Rights form, read the waiver aloud, acknowledged that she understood her rights, and signed the waiver portion of the form. After signing the waiver, Defendant agreed to speak with Agent Ribail. Her statements were knowing, intelligent, and voluntary. Defendant exercised total freedom in deciding to speak with Agent Ribail after learning her Miranda rights. Accordingly, the Court should deny her motion to suppress her statements.

Additionally, Defendant states that the Court should conduct an evidentiary hearing to determine whether Defendant's statements should be admitted into evidence. Contrary to Defendant's request, however, the Court can and should deny Defendant's motions to suppress without a hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of Defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (concluding that where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991); Crim. L.R. 47.1.

Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the government at trial over a defendant's objection. Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); Moran-Garcia, 783 F.Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress). Furthermore, a defendant can not reasonably

claim that he has less information than the government, and therefore should be excused from providing proof to support a motion. Batiste, 868 F.2d at 1092.

Here, Defendant has failed to support her allegations with a declaration, in clear violation of Local Rule 47.1(g). Moreover, in her moving papers, Defendant fails to provide any material factual distinctions – indeed, any distinctions at all – from what is contained in the files and records of discovery. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."). As such, this Court should deny Defendant's motion to suppress Defendant's statements without an evidentiary hearing.

**3. Agents Had Probable Cause To Arrest Defendant**

Defendant next argues that agents lacked probable cause to arrest her. (Def. Mot. 15.) Law enforcement officers can make warrantless arrests "if, at the time of the defendant's arrest, police officers have probable cause to believe that an offense has been, is being, or will be committed." United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (9th Cir. 1990) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause exists "when, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that a crime has, is being, or will be committed. United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999) (internal quotation marks omitted). Because probable cause largely turns on the totality of facts known to the officer, the standard is not amenable to expression in percentages. See Brinegar v. United States, 338 U.S. 160, 175 (1949). The probable cause standard is a "'practical, nontechnical conception' that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). While the probable cause standard is not easily reduced to "neat set of legal rules," Gates, 462 U.S. at 232, the Supreme

Court has repeatedly stated that "the substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Brinegar, 338 U.S. at 175.

In multi-defendant situations, the Supreme Court has established a "joint and several" theory of probable cause. In Maryland v. Pringle, the Supreme Court held that police had probable cause to arrest a front-seat passenger of a vehicle after finding cocaine in the back seat armrest, even though there were three individuals in the car. 540 U.S. 366 (2003). The Supreme Court reasoned that since any or all of the three individuals had knowledge of, and dominion and control over, the cocaine, a reasonable officer would had probable cause to believe the driver committed the crime of possessing the cocaine. Id. at 371.

Likewise, here, agents had probable cause to arrest any of the five Defendants, including Defendant Heredia-Vargas, because there was probable cause to believe each had knowledge of, and dominion and control over the marijuana. Defendant points to the fact that agents did not see her until after they entered the vehicle as evidence that they lacked probable cause to arrest her. (Def.'s Mot. 15.) However, just the opposite is true. The fact that Defendant remained in the motor home for the duration of the arrival of drugs and the loading into the motor home indicates that she, just as much as anyone else, maintained dominion and control over the drugs. Indeed, the agents reported that upon entering the vehicle, they were overwhelmed with the scent of marijuana and a masking agent, and saw bundles of marijuana located throughout the motor home. Accordingly, agents had probable cause to arrest Defendant Heredia-Vargas and her motion should be denied.

**C. DISCOVERY**

In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide; and (2) items demanded and discussed by Defendants which go beyond the strictures of Rule 16 and are not discoverable.

//

**1. Items Which The Government Has Already Provided Or Will Voluntarily Provide**

a. The Government will disclose to Defendants and make available for inspection, copying or photographing: any relevant written or recorded statements made by Defendants, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendants whether before or after arrest in response to interrogation by any person then known to Defendants to be a Government agent. The Government will also disclose to Defendants the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendants to be a Government agent if the Government intends to use that statement at trial.

b. The Government will permit Defendants to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendants' defenses or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendants;[1/]

c. The Government will permit Defendants to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the

---

1/ Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 116 S. Ct. 1480 (1996). Further, Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

attorney for the Government, and which are material to the preparation of their defenses or are intended for use by the Government as evidence during its case-in-chief at trial;[2/]

d. The Government has furnished to Defendants a copy of their prior criminal records, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

e. The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

f. The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3/]

g. The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

h. The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendants that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

---

2/ The Government does not have "to disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519 (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

3/ Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir.), cert. denied, 454 U.S. 902 (1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied, 440 U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-419 (9th Cir. 1975). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

i. The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Jencks and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[4/]

**2. Items Which Go Beyond The Strictures Of Rule 16**

**a. The Requests By The Defendants For Specific Brady Information Or General Rule 16 Discovery Should Be Denied**

Defendants requests that the Government disclose all evidence favorable to them, which tends to exculpate them, or which may be relevant to any possible defense or contention they might assert.

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87 (1963). As the Court explained in United States v. Agurs, 427 U.S. 97, 104 (1976), "a fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial." Thus, under Brady, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Pennsylvania v. Richie, 480 U.S. at 57 (quoting United States v. Bagley, 473 U.S. at 682).

---

[4/] Brady v. Maryland requires the Government to produce all evidence that is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 115 S. Ct. 1555 (1995). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process. United States v. Bagley, 473 U.S. at 675, n. 6; Weatherford v. Bursey, 429 U.S. at 559; United States v. Agurs, 427 U.S. at 108. The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the Bagley opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel,[5/] but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and **absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."**

United States v. Bagley, 473 U.S. at 675 (quoting United States v. Agurs, 427 U.S. at 108) (emphasis added); see also Pennsylvania v. Richie, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files."). Accordingly, the Government in this case will comply with the Brady mandate but rejects any affirmative duty to create or seek out evidence for the defense.

### b. Defendants' Motions For Disclosure Of Witness Information Should Be Denied Except As Is Agreed To By The Government

Defendants seek numerous records and information pertaining to potential Government witnesses. Regarding these individuals, the Government will provide Defendants with the following items prior to any such individual's trial testimony:

---

[5/] See United States v. Agurs, 427 U.S. 97, 106 (1976); Moore v. Illinois, 408 U.S. 786, 795 (1972). See also California v. Trombetta, 467 U.S. 479, 488, n. 8 (1984). An interpretation of Brady to create a broad, constitutionally required right of discovery "would entirely alter the character and balance of our present system of criminal justice." Giles v. Maryland, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting). Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgements.

(1) The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

(2) All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

(3) Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial because of the prohibition contained in the Jencks Act. See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by the doctrine of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 450 U.S. 150 (1972).

**c. The Rough Notes Of Our Agents**

Although the Government has no objection to the preservation of agents' handwritten notes, we object to their production at this time. Further, the Government objects to any pretrial hearing concerning the production of rough notes. If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); see also United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981); United States v. Griffin, 659 F.2d 932, 936-38 (9th Cir. 1981).

**d. Government Reports, Summaries, And Memoranda**

Rule 16, in pertinent part, provides:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government

> or other government agent in connection with the investigating or prosecuting of the case.

Rule 16(a)(2); see also United States v. Sklaroff, 323 F. Supp. 296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis added); United States v. Garrison, 348 F. Supp. 1112, 1127-28 (E.D. La. 1972).

The Government, as expressed previously, recognizes and embraces its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 450 U.S. 150 (1972), Rule 16, and the Jencks Act.[6/] We shall not, however, turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[7/] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

**e. Defendants Are Not Entitled To Addresses Of Government Witnesses**

While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses or telephone numbers. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list

---

6/ Summaries of witness interviews conducted by Government agents (DEA 6, FBI 302) are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985). The production of witness interview is addressed in more detail below.

7/ The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

of the witnesses it expects to call at trial. United States v. Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[8/]

The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980). In Jones, the court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of Government witnesses. Id. at 455. Several other Ninth Circuit cases have reached the same conclusion. See, e.g., United States v. Armstrong, 621 F.2d 951, 1954 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d at 687; United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness.").

**f. Motion Pursuant To Rule 12(d)**

Defendants are hereby notified that the Government intends to use in its case-in-chief at trial all evidence which Defendants are entitled to discover under Rule 16, subject to any relevant limitations prescribed in Rule 16.

**g. Defendants' Motion For Disclosure Of Oral Statements Made To Non-Government Witnesses Should Be Denied**

Defendants are not entitled to discovery of oral statements made by them to persons who were not - at the time such statements were made - known by the defendants to be Government agents. The plain language of Rule 16 supports this position. Rule 16 unambiguously states that defendants are entitled to "written and recorded" statements made by them. The rule limits discovery of oral statements to "that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to

---

[8/] Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of trial. 18 U.S.C. § 3432. See also United States v. Richter, 488 F.2d 170 (9th Cir. 1973)(holding that defendant must make an affirmative showing as to need and reasonableness of such discovery). Likewise, agreements with witnesses need not be turned over prior to the testimony of the witness, United States v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Egger, 509 F.2d 745 (9th Cir.), cert. denied, 423 U.S. 842 (1975); United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

interrogation by any person then known to the defendant to be a Government agent," and "the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a Government agent if the Government intends to use that statement at trial." The statutory language clearly means that oral statements are discoverable only in very limited circumstances, and then, only when made to a known Government agent.

### h. Personnel Files Of Federal Agents

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." United States v. Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case. In United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review the personnel files of federal law enforcement witnesses. In Jennings, the Ninth Circuit found that the present Department of Justice procedures providing for a review of federal law enforcement witness personnel files by the agency maintaining them is sufficient compliance with Henthorn. Jennings, 960 F.2d at 1492. In this case, the Government will comply with the procedures as set forth in Jennings.

Finally, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government. United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

//

//

**i. Reports Of Witness Interviews**

Defendants have requested the production of all reports generated in connection with witness interviews. To date, the Government does not have any reports regarding witness interviews or otherwise that have not been turned over to Defendant. However, to the extent that such additional reports regarding witness interviews are generated, the information sought by Defendants is not subject to discovery under the Jencks Act, 18 U.S.C., Section 3500. In Jencks v. United States, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect, for impeachment purposes, statements which had been made to government agents by government witnesses. Such statements were to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and if a demand had been made for specific statements of the witness. Id. at 1013-15. The Jencks Act, 18 U.S.C., Section 3500, was enacted in response to the Jencks decision. As the Supreme Court stated in an early interpretation of the Jencks Act:

> Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations. The committee reports of the Houses and the floor debates clearly manifest the intention to avoid these dangers by restricting the production to those statements defined in the bill.

Palermo v. United States, 360 U.S. 343, 350 (1959). Having examined the legislative history and intent behind enactment of the Jencks Act, the Court concluded, "[t]he purpose of the Act, its fair reading and its overwhelming legislative history compel us to hold that statements of a government witness made to an agent of the government which cannot be produced under the terms of 18 U.S.C. § 3500, cannot be produced at all."

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the witness signed the report, or otherwise adopted or approved the contents of the report. See 18 U.S.C. § 3500(e)(1); see also United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which

are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witnesses' oral statements."); United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (an interview report that contains a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354-44 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness's own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). As recognized by the Supreme Court, "the [Jencks Act] was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." Id. Defendants should not be allowed access to reports which they cannot properly use to cross-examine the Government's witnesses.

**j. Expert Witnesses**

The Government will disclose to Defendants the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

**k. Other Discovery Requests**

To the extent that the above does not answer all of Defendants' discovery requests, the Government opposes the motions on the grounds that there is no authority requiring us to provide such material.

## D. LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not oppose Defendants' request for leave to file further motions as long as the order grants reciprocal leave to file additional motions and that any new motions are based on newly discovered information.

//

## IV

## CONCLUSION

For the foregoing reasons, the Government requests that Defendant's motions be denied where indicated.

DATED: February 29, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Peter J. Mazza
PETER J. MAZZA
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARGARITA HEREDIA-VARGAS (2),<br>Defendants. | ) | Case No. 07-CR-3415-DMS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of a Response to Defendants' Motion for Discovery, Leave to File Additional Motions, and Suppression Motions By Defendant Trapero-Zazueta on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Norma Aguilar, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 29, 2008.

s/ Peter J. Mazza
PETER J. MAZZA