UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID LOPEZ-MIRALES,<br>aka Martin Gonzalez-Sanchez<br>Defendant. | Case No. 07CR3400-JAH<br><br>TABLE OF CONTENTS |


1. APPENDIX 1 - Supplemental Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 - 16

2. APPENDIX 2 - Order Denying Motion to Dismiss Indictment in 07CR1372-JAH . . . 17 - 28

# APPENDIX - 1

PROSPECTIVE JUROR: MY NAME IS [redacted]. I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA. I'M RETIRED. I WAS A CLINICAL SOCIAL WORKER. I'M SINGLE. NO CHILDREN. I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE NEVER ACTUALLY BEEN SELECTED AS A JUROR. CAN I BE FAIR? I'LL TRY. BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME INTO THE LEGAL SYSTEM. BUT I WOULD TRY TO WORK WITH THAT.

THE COURT: WE'RE ALL PRODUCTS OF OUR EXPERIENCE. WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR JUDGMENTS THAT YOU HAVE. WHAT WE ASK IS THAT YOU NOT ALLOW THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN MAKE AN INDEPENDENT JUDGMENT.

DO YOU THINK YOU CAN DO THAT?

PROSPECTIVE JUROR: I'LL DO MY BEST.

THE COURT: IS THERE A CERTAIN CATEGORY OF CASE THAT YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE CASE?

PROSPECTIVE JUROR: WELL, I HAVE SOME FAIRLY STRONG FEELINGS REGARDING DRUG CASES. I DO NOT BELIEVE THAT ANY DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.

I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES. AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE THAT WE SHOULD NOT BE.

THE COURT: WELL, LET ME TELL YOU, YOU'VE HIT ON THE TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA. AS I MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION CASES. YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU FOR SURE. JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE THAT.

NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE CASES? JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR

APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU, SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT. IF THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD. I WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE. BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING. I DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO GO FORWARD." IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU SHOULDN'T SERVE. ONLY YOU CAN TELL ME THAT.

PROSPECTIVE JUROR: WELL, I THINK I MAY FALL IN THAT CATEGORY.

THE COURT: IN THE LATTER CATEGORY?

PROSPECTIVE JUROR: YES.

THE COURT: WHERE IT WOULD BE DIFFICULT FOR YOU TO SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED IT?

PROSPECTIVE JUROR: YES.

THE COURT: I'M GOING TO EXCUSE YOU, THEN. I APPRECIATE YOUR HONEST ANSWERS.

PROSPECTIVE JUROR: MAY NAME IS [redacted]. I LIVE IN SAN DIEGO. I'M A REAL ESTATE AGENT. NOT MARRIED. NO KIDS. HAVE NOT SERVED. AND AS FAR AS BEING FAIR, IT KIND OF DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A DISPARITY BETWEEN STATE AND FEDERAL LAW.

THE COURT: IN WHAT REGARD?

PROSPECTIVE JUROR: SPECIFICALLY, MEDICAL MARIJUANA.

THE COURT: WELL, THOSE THINGS -- THE CONSEQUENCES OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS. WE'D ASK YOU TO ALSO ABIDE BY THAT. WE WANT YOU TO MAKE A BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

COULD YOU DO THAT? COULD YOU PUT ASIDE STRONG PERSONAL FEELINGS YOU MAY HAVE?

PROSPECTIVE JUROR: IT DEPENDS. I HAVE A VERY STRONG OPINION ON IT. WE LIVE IN THE STATE OF CALIFORNIA, NOT FEDERAL CALIFORNIA. THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

THE COURT: WELL, I DON'T KNOW HOW OFTEN MEDICAL MARIJUANA USE CASES COME UP HERE. I DON'T HAVE A GOOD FEEL FOR THAT. MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY OFTEN. BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE YOURSELF FROM THAT CASE.

ARE YOU WILLING TO DO THAT?

PROSPECTIVE JUROR: SURE.

THE COURT: ALL OTHER CATEGORIES OF CASES YOU COULD GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

PROSPECTIVE JUROR: FOR THE MOST PART, BUT I ALSO FEEL THAT DRUGS SHOULD BE LEGAL.

THE COURT: OUR LAWS ARE DIFFERENT FROM THAT. AND AS YOU HEARD ME EXPLAIN TO [redacted], A LOT OF THE CASES THAT COME THROUGH IN OUR COURT ARE DRUG CASES. YOU'LL BE CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO [redacted]. "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS COMMITTED? WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED WITH IT?"

COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

PROSPECTIVE JUROR: THE LAST JURY I WAS ASKED TO SIT ON, I GOT EXCUSED BECAUSE OF THAT REASON.

THE COURT: YOU SAID YOU COULDN'T DO IT? YOUR SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR OBJECTIVITY ABOUT DRUG CASES?

PROSPECTIVE JUROR: I THINK RAPISTS AND MURDERERS OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

THE COURT: I THINK RAPISTS AND MURDERERS OUGHT TO GO TO JAIL, TOO. IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE LAW IS. WE ELECT LEGISLATORS TO DO THAT. WE'RE SORT OF AT THE END OF THE PIPE ON THAT. WE'RE CHARGED WITH ENFORCING THE LAWS THAT CONGRESS GIVES US.

I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE. BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW CHANGED. IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT. SO

I'M NOT GOING TO FOLLOW IT HERE."

YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES. PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA. I DON'T KNOW IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.

THAT'S NOT WHAT YOUR PREROGATIVE IS HERE. YOUR PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL RIGHT. THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY. DOES IT SEEM TO ME THAT A CRIME WAS COMMITTED? YES. DOES IT SEEM TO ME THAT THIS PERSON'S INVOLVED? IT DOES." AND THEN YOUR OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO VOTE IN FAVOR OF THE CASE GOING FORWARD.

I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT." I DON'T KNOW WHAT YOUR FRAME OF MIND IS. YOU HAVE TO TELL ME ABOUT THAT.

PROSPECTIVE JUROR: I'M NOT COMFORTABLE WITH IT.

THE COURT: DO YOU THINK YOU'D BE INCLINED TO LET PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?

PROSPECTIVE JUROR: IT WOULD DEPEND UPON THE CASE.

THE COURT: IS THERE A CHANCE THAT YOU WOULD DO THAT?

PROSPECTIVE JUROR: YES.

THE COURT: I APPRECIATE YOUR ANSWERS. I'LL EXCUSE YOU AT THIS TIME.

PROSPECTIVE JUROR: I'M [redacted]. I LIVE IN ENCINITAS. I WORK FOR AN INSURANCE COMPANY HERE IN SAN DIEGO. I'M MARRIED. MY WIFE IS A P.E. TEACHER AT A MIDDLE SCHOOL. I HAVE TWO KIDS AGE 14 AND 16. I'VE BEEN A JUROR BEFORE PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE. AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED THEIR CONCERNS PREVIOUSLY. I HAVE A STRONG BIAS FOR THE U.S. ATTORNEY, WHATEVER CASES THEY MIGHT BRING. I DON'T THINK THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN TIME. I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.

AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME, IN ALL HONESTY. I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT

OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

THE COURT: IT SOMETIMES HAPPENS THAT AT THE TIME THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE, THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER WHEN IT'S PRESENTED TO A GRAND JURY. THAT'S WHY THIS GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

YOU'RE NOT PART OF THE PROSECUTING ARM. YOU'RE INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S OFFICE. AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

YOU'VE HEARD MY GENERAL COMMENTS. YOU HAVE AN APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

YOU APPRECIATE THAT; RIGHT?

PROSPECTIVE JUROR: I THINK I COULD APPRECIATE THAT, YES.

THE COURT: AND SO WE'RE -- LOOK, I'LL BE HONEST WITH YOU. THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S OFFICE DO GO FORWARD. MOST OF THE TIME, THE GRAND JURY PUTS ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S. ATTORNEY.

OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I DON'T CARE ABOUT THE EVIDENCE. I'M NOT GOING TO PAY ATTENTION TO THE EVIDENCE. IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

GOING TO GO WITH THAT." IT DIDN'T SOUND LIKE THAT'S WHAT YOU WERE SAYING. YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST. THAT'S WELL AND GOOD.

YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND JURY, YOU'RE THE ULTIMATE ARBITER. THEY DON'T HAVE THE AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW GRAND JURORS' APPROVAL. I WOULD WANT YOU NOT TO JUST AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY. YOU HAVE TO MAKE THAT INDEPENDENTLY.

YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?

PROSPECTIVE JUROR: I'M NOT A PERSON THAT THINKS OF ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE. BUT AGAIN, JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.

THE COURT: I UNDERSTAND WHAT YOU'RE SAYING. LET ME TELL YOU THE PROCESS WILL WORK MECHANICALLY. THEY'RE GOING TO CALL WITNESSES. AND WHAT THEY'RE GOING TO ASK YOU TO DO IS EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE. THE ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS THEMSELVES. THAT'S THE WAY THE PROCESS IS GOING TO WORK.

YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S BEING SUGGESTED HERE. AT LEAST I'M CONVINCED ENOUGH TO LET THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME. I WANT EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES I'VE JUST DESCRIBED?

PROSPECTIVE JUROR: I WOULD DO MY BEST TO DO THAT. I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A DEFENDANT COMING BEFORE THIS GRAND JURY. HAVING SAID THAT, I WOULD DO MY BEST. I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

THE COURT: ALL I'M TRYING TO GET AT IS WHETHER YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF THE FACTS.

A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS A SERGEANT ON THE SHERIFF'S DEPARTMENT. AND YEARS AGO WHEN I WAS A PROSECUTOR, I WORKED WITH HIM. HE WAS ALL ABOUT ARRESTING AND PROSECUTING PEOPLE. BUT WHEN HE GOT HERE, HE

SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION. I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL FOR A NUMBER OF -- OVER A YEAR, I THINK. 18 MONTHS, MAYBE. HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE GRAND JURY SERVICE.

BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE GRAND JURY. HE WAS A POLICEMAN. HE'D BEEN INVOLVED IN PROSECUTING CASES. BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH. BUT I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT YOU HAVE. I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO WASTE TIME ON CASES THAT LACK MERIT. THE CONSCIENTIOUS PEOPLE WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO TRUMP UP PHONY CHARGES AGAINST PEOPLE.

MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO. THAT DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY, "WELL, THE U.S. ATTORNEY'S ON THIS. THE PERSON MUST BE GUILTY." I CAN'T DO THAT. I LOOK AT THE CASES STAND-ALONE, INDEPENDENT, AND I EVALUATE THE FACTS. I DO WHAT I'M CHARGED

WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE THAT'S PRESENTED.

SO THAT'S THE QUESTION I HAVE FOR YOU. I CAN UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY. AND FRANKLY, I AGREE WITH THE THINGS THAT YOU'RE SAYING. THEY MAKE SENSE TO ME. BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT I'VE MENTIONED EARLIER: DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS COMMITTED? DO I HAVE A REASONABLE BELIEF THAT THE PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?

CAN YOU DO THAT?

PROSPECTIVE JUROR: AGAIN, I WOULD DO MY BEST TO DO THAT. BUT I DO BRING A VERY, VERY STRONG BIAS. I BELIEVE THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US THAT WOULD BEAR ON THE TRIAL. I WOULD LOOK AT THE CASE AND PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE TO TRIAL. I'D HAVE A VERY DIFFICULT TIME.

THE COURT: YOU WOULDN'T BE ABLE TO DO THAT. WE WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT HAVEN'T BEEN PRESENTED TO YOU. YOU HAVE TO MAKE A DECISION BASED ON WHAT'S BEEN PRESENTED.

BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE WON AT A JURY TRIAL.

IS THAT RIGHT, MR. ROBINSON?

MR. ROBINSON: ON OCCASION, YOUR HONOR. NOT VERY OFTEN.

THE COURT: IT COMES UP EVEN IN AN OFFICE WITH PEOPLE CHARGED WITH THE SAME FUNCTION. I DON'T WANT TO BEAT YOU UP ON THIS, [redacted] I'M EQUALLY CONCERNED WITH SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS." I WOULDN'T WANT YOU TO DO THAT. IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

PROSPECTIVE JUROR: I THINK THAT THERE'S A POSSIBILITY I WOULD BE INCLINED TO DO THAT.

THE COURT: I'M GOING TO EXCUSE YOU, THEN. THANK YOU. I APPRECIATE YOUR ANSWERS.

# APPENDIX - 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
DIANA JIMENEZ-BERMUDEZ,
Defendant.

CASE NO. 07cr1372 JAH

**AMENDED ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Defendant Diana Jimenez-Bermudez has filed a Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

On February 28, 2007, a federal grand jury empaneled in this district on January 11, 2007 returned a two-count Indictment charging Defendant with Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

## II. CHALLENGED INSTRUCTIONS[1]

### A. Voir Dire Session

Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns, explained the function of the grand jury to the prospective jurors as follows: "The grand

[1]In her reply brief, Defendant makes a passing reference to the fact that the grand jurors were shown a video presentation on the role of the grand jury, however there is no substantive challenge to the use of the video, and thus use of the video will not be discussed in depth herein.

Case 3:07-cr-01372-JAH Document 46 Filed 12/05/2007 Page 2 of 11

jury is determining really two factors: 'Do we have a reasonable – collectively, do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?' If the answer is 'yes' to both of those, then the case should move forward. If the answer to either of the questions is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

During voir dire, Judge Burns explained to the potential grand jurors that the presentation of the evidence to the grand jury was going to be one-sided. Id. at 14. However, Judge Burns stated, "Now, having told you that, my experience is that the prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. They have a duty to do that." Id. at 14-15.

One prospective juror, a retired clinical social worker, indicated that he did not believe that any drugs should be considered illegal. Id. at 16. He also stated that he had strong feelings about immigration cases and thought the government was spending a lot of time unnecessarily persecuting people. Id. The following exchange occurred:

> The Court: Now, the question is can you fairly evaluate those cases? Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what our Government is doing. I disagree with these laws, so I"m not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.
>
> Prospective Juror: Well, I think I may fall in that category.
>
> The Court: In the latter category?
>
> Prospective Juror: Yes.
>
> The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?
>
> Prospective Juror: Yes.
>
> The Court: I'm going to excuse you, then. I appreciate your honest answers.

Id. at 16-17.

Later, another prospective juror, a real estate agent, expressed a concern regarding

the disparity between state and federal law with respect to medical marijuana. Judge Burns responded:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail. Id. at 25-26. The following exchange ensued:

> The Court: I think rapists and murderers ought to go to jail too. It's not for me as a judge to say what the law is. We elect legislators to do that. We're sort of at the end of the pipe on that. We're charged with enforcing the laws that Congress gives us.
>
> I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."
>
> You'd have a similar obligation as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it but you'd vote against criminalizing some drugs.
>
> That's not what your prerogative is here. Your prerogative instead is to act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.
>
> I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it." I don't know what your frame of mind is. You have to tell me about that.
>
> Prospective Juror: I'm not comfortable with it.
>
> The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?
>
> Prospective Juror: It would depend upon the case.
>
> The Court: Is there a chance that you would do that?
>
> Prospective Juror: Yes.
>
> The Court: I appreciate your answers. I'll excuse you at this time.

Id. at 26-28.

Later, a potential juror said that he was "soft" on immigration because he had done volunteer work with immigrants in the field, but that he could be fair and objective. Judge Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're not about trying to change people's philosophies and attitudes here. That's not my business. But what I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here." Id. at 61. This juror was not excused.

**B. Charge to Impaneled Grand Jury**

After the grand jury was impaneled, Judge Burns gave further instructions regarding the responsibilities of the grand jurors.

With respect to the enforcement of federal laws, Judge Burns explained:

> But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is [sic] criminal is not up to you. That's a judgment that Congress makes.
>
> And if you disagree with that judgment made by Congress, then your option is not to say, 'Well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment] even though the evidence may be insufficient.' Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.
>
> Furthermore, when you're deciding whether to indict or not to indict, you shouldn't be concerned with punishment that attaches to the charge. I think I also alluded to this in the conversation with one gentleman. Judges alone determine punishment. We tell trial juries in criminal cases that they're not to be concerned with the matter of punishment either. Your obligation at the end of the day is to make a business-like decision on facts and apply those facts to the law as it's explained and read to you.

App. 1 to Gov't Response at 8-9.

With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." Id. at 20. Later, Judge Burns said, "If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you." Id. at 27.

## III. DISCUSSION

### A. Instructions Re: Role of Grand Jury

Defendant contends that Judge Burns' instructions and the dismissal of two potential jurors deprived Defendant of the traditional functioning of the Grand Jury. Specifically, Defendant claims that the challenged statements in combination with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising their constitutional discretion to not indict even if probable cause supports the charge." (Def.'s Reply Br. 8.) Looking at the instructions as a whole, the Court disagrees.

Judge Burns made it clear that the jurors were not to refuse to indict in the face of probable cause *on the ground that they disagreed with Congress's decision to criminalize certain activity*. Judge Burns did not err in doing so. In United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury instruction that states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you." The majority opinion observed that the instruction was not contrary to any long-standing historical practice surrounding the grand jury and noted that shortly after the adoption of the Bill of Rights, federal judges charged grand juries with a duty to submit to the law and to strictly enforce it. Id. at 1193,1202-03. "We cannot say that the grand jury's power to judge the wisdom of the laws is so firmly established that the district court must either instruct the jury on its power to nullify the laws or remain silent." Id. at 1204.

A prohibition against judging the wisdom of the criminal laws enacted by Congress amounts to the same thing as a prohibition against refusing to indict based on disagreement with the laws. It is true that Judge Burns used stronger language that, viewed in isolation, could be misconstrued as requiring the return of an indictment in *all* cases where probable cause can be found. Particularly troubling is the following statement made to the real estate agent: "Your prerogative instead is to act like a judge and to say, 'All right. This is what I've got to deal with objectively. Does it seem to me that a crime

was committed? Yes. Does it seem to me that this person's involved? It does.' *And then your obligation*, if you find those things to be true, *would be to vote in favor of the case going forward*." App. 2 to Gov't Response at 26. However, viewed in context, Judge Burns was not mandating the issuance of an indictment in *all* cases where probable cause is found; he was explaining that disagreement with the laws should not be an obstacle to the issuance of an indictment.[2]

Furthermore, the word "obligation" is not materially different than the word "should." In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors "should" indict if they find probable cause does not violate the grand jury's independence. The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002)). The dissenting opinion notes that the word "should" is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction And Language Guide 931 (1999)) (emphasis added).[3]

Defendant also argues that Judge Burns improperly forbade the grand jury from considering the potential punishment for crimes when deciding whether or not to indict. Defendant relies on the following statement:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the

---

[2] The Supreme Court has recognized that a grand jury is not required to indict in every case where probable cause exists. In Vasquez v. Hillery, 474 U.S. 254, 263 (1986), the Supreme Court explained: "The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense - all on the basis of the same facts. Moreover, '[t]he grand jury is not bound to indict in every case where a conviction can be obtained.' United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)."

[3] Defendant concedes that at other times Judge Burns instructed that upon a finding of probable cause, the case "should" go forward. App. 2 to Gov't Response at 8, 17; App. 1 to Gov't Response at 4, 23.

> consequence that Congress has set for these things. *We'd ask you to also abide by that.* We want you to make a business-like decision and look at the facts and make a determination of whether there was a probable cause.

App. 2 to Gov't Response at 25. (Emphasis added.) Although Judge Burns stated that trial jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors. Instead, Judge Burns *requested* that the grand jurors follow the same principle. Similarly, during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment that attaches to the charge." App. 1 to Gov't Response at 8. (Emphasis added.)

In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not* be concerned about punishment in the event of conviction; judges alone determine punishment." (Emphasis added.) Consistent with the reasoning in Marcucci and Navarro-Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on considering punishment and was therefore constitutional. The instructions given by Judge Burns regarding the consideration of punishment were substantially the same as the instruction in Cortez-Rivera.

Judge Burns did not pronounce a general prohibition against jurors exercising their discretion to refuse to return an indictment in the face of probable cause. In any case, "history demonstrates that grand juries do not derive their independence from a judge's instruction. Instead they derive their independence from an unreviewable power to decide whether to indict or not." Navarro-Vargas II, 408 F.3d at 1204.

Judge Burns informed the jurors about the utmost secrecy of the grand jury proceedings and their deliberations. In addition, a video shown to the potential grand jurors titled, "The Federal Grand Jury: The People's Panel," which was intended to educate potential grand jurors about their responsibilities as grand jurors, also informed the jurors of the secrecy of the proceedings. Judge Burns and the video also emphasized to the jury that they were independent of the Government and did not have to return an indictment just because the Assistant U.S. Attorney asked them to. Judge Burns characterized the

jury as "a buffer between our Government's ability to accuse someone of a crime and then putting that person through the burden of standing trial." App. 1 to Gov't Response at 26. Judge Burns also told the jurors that they were not to be a "rubber stamp" and were expected to depend on their independent judgment. Id. at 27.

Even though the jurors were not explicitly instructed that they could use their discretion to refuse to return an indictment, they retained that power by virtue of the secrecy surrounding their deliberations and the unreviewability of their decisions. Nothing that Judge Burns said or did impinged on the jurors' independence in this regard.

Defendant counters that the dismissal of the two potential jurors undermined the grand jury's independence from the very start. According to Defendant, when Judge Burns dismissed the jurors, the message was clear that they were to indict in every case where there was probable cause or they would be excused. Defendant contends that the remaining grand jurors could not have understood Judge Burns' actions in any other way. (Reply Br. 18.) The Court disagrees.

Upon reading the voir dire transcript, it is apparent that the jurors were excused because they were biased against the government with respect to a whole category of criminal laws, not simply because they were independent-minded and might refuse to return an indictment in a case where probable cause exists. Judge Burns explained to the clinical social worker, "We're all products of our experience. We're not going to try to disabuse you of experiences or judgments that you have. What we ask is that you not allow those to control invariably the outcome of the cases coming in front of you; that you look at the cases fresh, you evaluate the circumstances, listen to the witness testimony, and then make an independent judgment." App. 2 to Gov't Response at 15. Judge Burns excused the social worker after he admitted that it would be difficult for him to return an indictment in drug or immigration cases.

Similarly, the real estate agent expressed that he thought drugs should be legal and that people using drugs should not be sent to jail. App. 2 to Gov't Response at 25-26. The real estate agent said that he was not comfortable with indicting in drug cases.

Although he did not say that he would refuse to indict in all cases involving drugs, he admitted that because of his beliefs, there was a chance that he would refuse to return an indictment in a drug case even though there was probable cause. Id. at 27. The real estate agent's responses established that he had serious concerns regarding the criminalization of drugs and could not be impartial with respect to these cases

That bias was the reason for the dismissal of the first two potential jurors is confirmed by the dismissal of a third potential juror. This juror stated that he had a strong bias for the Government. App. 2 to Gov't Response at 38. Judge Burns cautioned the juror that he should not "automatically defer to [the Government] or surrender the function and give the indictment decision to the U.S. Attorney. You have to make that independently." Id. at 40. Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of each case independently based on the evidence presented. Id. at 42-43. Demonstrating his even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I wouldn't want you to do that." Id. at 44.

A reasonable grand juror would not have interpreted the dismissal of the first two potential jurors as a message that they must indict in all cases where probable cause is found or risk being excused from service. It was apparent to the other jurors that a lack of impartiality with respect to certain types of cases, *not* independence, was the reason for all three dismissals.

In sum, Judge Burns did not err in instructing the grand jurors that they were not to refuse to return an indictment on the ground that they disagreed with the laws. Furthermore, nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to refuse to indict for any reason whatsoever. As the Ninth Circuit noted in Navarro-Vargas II, 408 F.3d at 1204, the grand jury's independence results from the secrecy of their deliberations and the unreviewability of their decisions. Nothing in the record shows any impediment to that independence.

B. **Instructions re: Assistant U.S. Attorneys**

Defendant also contends that Judge Burns committed structural error by making comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the charge." According to Defendant, not only did Judge Burns' comments contradict United States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation, leading to inaccurate probable cause determinations. Defendant reasons that given Judge Burns' comments, the grand jurors would have assumed that if the prosecutor did not present any exculpatory evidence, then none exists, rendering further investigation a waste of time.

Under Williams, prosecutors do not have a duty to present substantial exculpatory evidence to the grand jury. Although Assistant U.S. Attorneys apparently have an employment duty to disclose "substantial evidence that directly negates the guilt" of a subject of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to the Government's position.

Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys to present adverse evidence were inaccurate. However, Judge Burns' comments do not rise to the level of structural error. As discussed above, the video and Judge Burns stressed that the grand jury was independent of the Government. The video and Judge Burns also explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional documents or witnesses. App. 1 to Gov't Response at 11, 24. The jurors were also told about their right to pursue their own investigation, even if the Assistant U.S. Attorney disagrees with the grand jury's decision to pursue the subject. Id. at 12.

In light of the foregoing instructions, the Court does not agree that the grand jurors would assume that if the Government did not present any exculpatory evidence, none exists. A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of certain exculpatory evidence, whether due to legitimate circumstances or inadequate investigation, and that further investigation by the grand jury may be needed to properly evaluate the evidence before them. Furthermore, Judge Burns told the jury

that "in *most* instances" the U.S. Attorneys are duty-bound to present exculpatory evidence. App. 1 to Gov't Response at 20. Based on this qualifying language, the grand jurors would have understood that the prosecutor is not always bound to present exculpatory evidence. Thus, "the structural protections of the grand jury" have not "been so compromised as to render the proceedings fundamentally unfair." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988).

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction is **DENIED**.

DATED: December 5, 2007

HON. JOHN A. HOUSTON
United States District Judge

**IT IS SO ORDERED.**